IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERRANCE K. DAUGHERTY, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:05-CV-0384-JOF
MIKART, INC., :
:
    Defendant. :

**OPINION AND ORDER**

This matter is before the court on Defendant's motion for summary judgment [23-1].

**I.   Background**

    **A.   Procedural History and Facts**

Plaintiff, Terrance K. Daugherty, filed suit against Defendant, Mikart, Inc., alleging causes of action of race discrimination pursuant to 42 U.S.C. § 1981 and violations of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1). Plaintiff voluntarily dismissed his § 1981 claim, and Defendant filed the instant motion for summary judgment concerning Plaintiff's FMLA claim.

Defendant provides manufacturing and packaging services to the pharmaceutical industry. Plaintiff worked as a chemist for Defendant from August 6, 2001, until his

termination on April 16, 2003. Plaintiff was responsible for testing the stability release of pharmaceutical drugs produced by Defendant. Robert Satterfield was Plaintiff's supervisor.

Under Defendant's FMLA policy, an employee taking leave must provide a medical certification from his health care provider. That documentation is provided to Barbara Siegfried in Defendant's Human Resources Department. Under Defendant's Disciplinary Policy, knowingly falsifying, removing, or destroying information regarding employment records can lead to discipline, up to and including termination.

In 2003, Plaintiff requested and received twenty-four days of FMLA leave. In addition to Plaintiff, four other individuals supervised by Mr. Satterfield were approved for FMLA leave requests. None of the employees requesting leave was terminated.

On April 1, 2003, Ms. Siegfried sent Plaintiff a letter with a FMLA leave request form and a Certification of Health Care Provider form. She asked Plaintiff to have his doctor complete the certification and return it to her. On April 7, 2003, Plaintiff returned the certification to Ms. Siegfried. Ms. Siegfried testified that when she received the letter, she noticed that the physician's signature "looked altered" and appeared to be a "bad cut and paste job." She also noticed that the first two pages of the form were originals while the third page, containing the signature, was a photocopy. She testified that the signature was on uneven horizontal lines with a vertical line where it looked like another piece of paper had been pasted onto the page, cutting off the bottom loops of the cursive signature.

2

AO 72A
(Rev.8/82)

On April 8, 2003, Ms. Siegfried called the office of Plaintiff's physician, Dr. S. Carter Davis, and spoke with Sherry Watkins, Dr. Davis's medical assistant. Ms. Watkins verified that the signature was Dr. Davis's. Ms. Siegfried, however, later the same day decided to fax Ms. Watkins a copy of the third page of the certification provided by Plaintiff along with a blank third page of the certification. In her cover sheet, Ms. Watkins stated that she believed the signature on the form submitted by Plaintiff was not consistent with the original blank form. On April 9, 2003, Dr. Davis's office faxed to Ms. Siegfried a new copy of the third page of the certification form with a new signature.[1]

Ms. Siegfried called Plaintiff on April 9, 2003 to ask him about the certification form. He returned her call on April 10, 2003 and stated that he would meet with her on April 11. However, Plaintiff did not come to her office or call her on April 11. Plaintiff spoke to Ms. Siegfried on April 15, 2003, when he returned from his FMLA leave. The same day, Ms. Siegfried and Larry Gunnin, Defendant's Vice President of Finance, met with Plaintiff. Ms. Siegfried told Plaintiff that it appeared to her that Dr. Davis's signature was copied over on the certification form Plaintiff submitted. Plaintiff testified that he told Ms. Siegfried and Mr. Gunnin that this was the document provided to him by Dr. Davis's office. Although

---

[1] Because Ms. Siegfried was attempting to determine whether the signature on the form submitted by Plaintiff was valid, she again faxed Ms. Watkins requesting that Dr. Davis verify that he did actually sign the form submitted by Plaintiff on April 7, 2003. Dr. Davis's office did not respond to this request. Plaintiff disputes that this communication was ever sent to Dr. Davis's office. The court need not resolve this dispute, however, because it is not relevant to Defendant's motion for summary judgment.

3

Plaintiff's counsel argues that Ms. Siegfried never asked him whether he had altered the signature, *see* Plaintiff's Response, ¶ 59, Plaintiff specifically testified in his deposition that Ms. Siegfried "stated to me that it looked like I forged the signature. She didn't ask me if it was legitimate." *See* Plaintiff's Depo., at 68-69. He further clarified that she said "something in the "nature" of "[t]his doesn't look legitimate to me." *Id.* at 69. Plaintiff testified that Ms. Siegfried told him "the third page looked like a copy and not an original." *Id.* Plaintiff told her that it was legitimate and that he got it from the doctor's office. *Id.* He also told Ms. Siegfried that the signature "looked like a stamp" to him. *Id.* Plaintiff recalled that Ms. Siegfried said "it looked as if [Plaintiff] taped something over or copied a signature over" and Plaintiff responded, "I told her to call the doctor's office to inquire." *Id.*

Ms. Siegfried and Mr. Satterfield concluded that Plaintiff had falsified the signature and decided to terminate Plaintiff's employment. They informed Plaintiff of their decision on April 16, 2003.[2]

---

[2] In his response to Defendant's statement of material undisputed facts, Plaintiff asserts that there is a "question of fact as to whether Barbara Siegfried knows of any other employee who may have forged the document, including herself." *See* Response, ¶ 63. Plaintiff provides no citation to the record to support this speculative "dispute of fact," and therefore the court finds it insufficient to counter Defendant's statement.

4

### B. Contentions

Defendant contends that Plaintiff cannot establish a prima facie case of retaliation under the FMLA because it terminated Plaintiff due to its belief that he had falsified a physician's signature on a FMLA leave certification form he submitted to Defendant. In the alternative, Defendant further contends that even if Plaintiff could set forth a prima facie case of discrimination, its asserted reason for the termination is not pretextual because it had a good faith belief that the certification form was fraudulent. Additionally, Defendant previously granted Plaintiff (and other employees) FMLA leave.

Plaintiff responds that he can establish the causation prong of his prima facie case because he was terminated shortly after requesting FMLA leave. Plaintiff argues that Defendant's legitimate, non-discriminatory reason for his termination is pretextual because Defendant has asserted inconsistent reasons for his termination and because there is a dispute of fact as to whether Plaintiff actually submitted a falsified certification form to Defendant.

## II. Discussion

To establish a prima facie case of FMLA retaliation, a plaintiff must prove that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) the action was causally related to the protected activity. *See, e.g.*, *Wascura v. City of S. Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001). No party disputes that Plaintiff can establish the first two elements. Defendant, however, argues that Plaintiff cannot establish causation because he was terminated for falsifying his physician's signature on his FMLA leave form,

5

not for requesting FMLA leave. While it is true that Plaintiff's termination was in temporal proximity with his request for FMLA leave, Plaintiff admits that Defendant terminated him because it believed he had falsified the signature on the medical certification form he provided to Defendant. The court finds that this admission is fatal to the causation prong of Plaintiff's prima facie case because the submission of the problematic certification form is an intervening factor which breaks the causal connection.[3]

Plaintiff, however, asserts that Defendant's position is not credible because (1) Defendant asserted inconsistent reasons for his termination and (2) there is a question of fact as to whether Plaintiff actually submitted the falsified certification form to Defendant. Whether one couches these arguments as relevant to his prima facie case or whether Plaintiff offers them as pretext, the arguments are without merit.

The record is beyond clear that Defendant, through Ms. Siegfried, has asserted since she received the document on April 7, 2003, that the signature on the certification form

---

[3] Plaintiff makes a passing argument that federal regulations require that he be given a reasonable time to cure the "defect" in his certification form pursuant to 29 C.F.R. § 825.305(d), which states that an "employer must . . . advise an employee of the anticipated consequences of an employee's failure to provide adequate certification [for FMLA leave]. The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." *Id.* Obviously, this regulation does not apply to the circumstances here. "An incomplete certification is akin to an inadequate certification or a certification that fails to provide the information requested by the employer." *See Baldwin-Love v. Electronic Data Systems, Corp.*, 307 F. Supp. 2d 1222, 1234 (M.D. Ala. 2004). Plaintiff's certification here is not alleged to have been incomplete; rather, Defendant believed the certification to be fraudulent.

6

AO 72A
(Rev.8/82)

provided by Plaintiff had been photocopied from another source and cut and pasted on the certification form.  *See* Plaintiff's Termination Memo, Pl's Depo., Exh. 14 (stating "the document provided to Mikart is fraudulent.  As such, your employment with Mikart, Inc. is being terminated effective immediately for violation of company rules and policy"); Georgia Department of Labor Form, Response, Exh. 6 (explaining Plaintiff was terminated for "violation of company policy – employee submitted a [certification] with a questionable physician's signature"); Siegfried Depo., at 51 (testifying that Plaintiff was fired for "submitting a fraudulent document"); Siegfried Depo., at 87 (testifying that she fired Plaintiff because she believed he "falsified the doctor's statement"); Satterfield Depo., at 28 (agreeing that he fired Plaintiff for "falsifying a document").  Plaintiff can quibble over whether Defendant stated the reason for termination was "falsifying a document" or "submitting a false document" but these are not disputes of material fact, and the court finds that no reasonable jury could conclude that Defendant had provided inconsistent reasons for Plaintiff's termination.[4]

---

[4] Furthermore, it is irrelevant that Dr. Davis's assistant, Ms. Watkins, informed Ms. Siegfried that the signature was "genuine."  Ms. Siegfried never contended that she believed Plaintiff forged Dr. Davis's signature.  Rather, she believed – and informed Ms. Watkins of this belief – that Plaintiff had copied Dr. Davis's signature from another form and cut and paste it on to the certification form he submitted on April 7, 2003.  The question is whether this "genuine" signature was photocopied from another source and then pasted onto the certification form submitted by Plaintiff.

Plaintiff also asserts there is a "fact dispute as to whether the alleged fraudulent document was ever submitted to the Plaintiff by Defendant's physician." Response, at 4. The court cannot determine precisely what this means, but Plaintiff later argues that there is a "dispute of fact as to whether the form was ever submitted by Plaintiff or prepared at the doctor's office." *Id.* at 5. In his deposition, Plaintiff seems to state that he brought documents from his doctor's office to Ms. Siegfried, but that the signature page in question is not the same signature page that he gave to Ms. Siegfried. *See* Plaintiff's Depo., at 137-39. Plaintiff offers a theory as to whether the page proffered by Ms. Siegfried was folded in the same manner as the other pages submitted with the leave request on April 7, 2003. Curiously, however, he testified earlier in the deposition that it *was* the document he submitted to Defendant. *See* Plaintiff's Depo., at 64, authenticating Exh.13). Further, as Defendant points out, the fact that the first two pages of the certification form were original (and presumably folded as they had been mailed to Plaintiff by Ms. Siegfried), but the third page was an obvious photocopy (and not folded as if it had been mailed) is precisely what caused Ms. Siegfried to be suspicious of the third page in the first place.

Even accepting the fact that Plaintiff did not actually submit this form, Plaintiff has presented no evidence that Ms. Siegfried did not have a good faith basis for believing that Plaintiff submitted the questionable form. *See Cooper v. Southern Company*, 390 F.3d 695, 740 (11th Cir. 2004) (the "relevant issue here is not whether Harris actually falsified the entry,

8

but rather whether Walters honestly *believed* Harris falsified the entry") (emphasis in original); *EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000). He did not deny doing so when Ms. Siegfried spoke to him on the phone, nor in the meeting with Ms. Siegfried and Mr. Gunnin, nor when Ms. Siegfried and Mr. Satterfield informed Plaintiff that he was being terminated. *See* Plaintiff's Depo. at 141 (testifying that Plaintiff told Ms. Siegfried this is the document given to him by the doctor's office). Whether Plaintiff speculates now that the doctor's office cut and pasted the signature or the signature page was altered after Plaintiff submitted the form to Ms. Siegfried, Plaintiff never raised these issues with Ms. Siegfried or Mr. Satterfield at the time he was terminated. Thus, the court concludes Plaintiff has not proffered any evidence to show that Ms. Siegfried did not have a good faith basis for concluding that Plaintiff submitted a fraudulent certification form. As such, Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual. For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment [23-1].

### III.   Conclusion

The court GRANTS Defendant's motion for summary judgment [23-1]. The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 27th day of April 2006.

AO 72A
(Rev.8/82)

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)